NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| BUBBLES N' BOWS, LLC, | : | |
| | : | Civil Action No. 06-5391 (FLW) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| FEY PUBLISHING CO., et al., | : | |
| | : | |
| Defendants. | : | |

**WOLFSON**, **United States District Judge:**

      Plaintiff Bubble N' Bows, LLC ("Plaintiff") initiated the instant action against Defendants, Fey Publishing Co. ("Fey Publishing") and Donald H. Gasch (collectively, "Defendants"), as well as John Does 1-10 and ABC Corporations 1-10.  Plaintiff alleges that, despite a contract between Plaintiff and Fey Publishing, Defendants discriminatorily refused to print an "Alternative Lifestyle" line of imprintables and cards, which depicts and focuses on alternative lifestyles.  The six-count Complaint includes the following causes of action: (I) breach of contract; (II) violation of New Jersey's Law Against Discrimination; (III) a claim for punitive damages; (IV) violation of New Jersey's Consumer Fraud Act ; (V) negligent misrepresentation; and (VI) a claim for attorneys' fees and costs.  Defendants filed the instant motion to dismiss Counts II-VI of the Complaint against Fey Publishing; all counts against Mr. Gasch; and to strike certain parts of the Prayers for Relief for Counts II, IV and V in the Complaint.  The parties have subsequently stipulated that Counts I, IV and V of the Complaint against Mr. Gasch be dismissed.  For the reasons herein stated, Counts IV and V are dismissed; and Counts II, III and VI are dismissed without prejudice.  However, Plaintiff shall

have ten days to amend its Complaint to reflect the decision of this Court herein with regards to Counts II, III and VI against Defendants. Furthermore, Defendants' motion to strike is denied as moot.

## I. BACKGROUND

For the purposes of this Opinion, the relevant facts are based on the allegations in the Complaint. Plaintiff is an invitation studio specializing in imprintable invitations, fill-ins and greeting cards for various occasions. Fey Publishing is a full-service company specializing in printing, letterpress and bindery with the capability of producing offset imprintables with Swarovski crystals, rhinestones and glitter, as well as foil stamping.

In April 2005, Nicole Lopusznick, the owner of Bubbles' N' Bows, LLC, designed a signature line, entitled *Life's Shadows*. On or about April 25, 2005, Ms. Lopusznick contacted Eric Petzold, the sales representative and agent of Fey Publishing, to discuss the possibility of retaining Fey Publishing to print the *Life's Shadows* line. Thereafter, both parties entered into a contract whereby Plaintiff would provide Fey Publishing with the designs for all of the *Life's Shadows* lines and Fey Publishing would use those designs to create plates to print the lines as well as add Swarovsky crystals, glitter and foils to the designs (the "Agreement"). Pursuant to the Agreement, Plaintiff provided a $1,500.00 deposit to Fey Publishing.

During the same month, Plaintiff designed the first *Life's Shadows* line, entitled "Traditional Lifestyle," with imprintables and cards depicting and focusing on traditional lifestyle. Fey Publishing received the designs and agreed to print the "Traditional Lifestyle" line. Plaintiff also designed a second *Life's Shadows* line of imprintables and cards focusing on alternative lifestyles, entitled "Alternative Lifestyle." Fey Publishing agreed also to print this line.

On or about February 3, 2006, Ms. Lopusznick informed Mr. Petzold that the samples of cards for the "Traditional Lifestyle" and "Alternative Lifestyle" lines must be ready by May 21, 2006, for the National Stationary Show in New York City. Ms. Lopusznick further informed Mr. Petzold the importance of having the samples ready before the start of the show because she needed to display the cards. Mr. Petzold assured Ms. Lopusznick that samples for all designs would be made, printed, ready and received by Plaintiff before the start of the show.

On or about May 8, 2006, Fey Publishing provided Plaintiff with an estimate to print a catalog featuring both the "Traditional Lifestyle" and "Alternative Lifestyle" lines. Fey Publishing also confirmed the catalog design and layout. As of May 17, 2006, Fey Publishing was still in production of the "Alternative Lifestyle" line. As late as May 18, 2006, Mr. Petzold continued to assure Ms. Lopusznick that the samples would be delivered before the start of the show. On May 20, 2006, one day before the show, however, only some of the samples were received, and they were not printed in accordance with the designs provided by Ms. Lopusznick, thus, rendering them unusable. Ms. Lopusznick called and left a message for Mr. Petzold on the same day. She demanded that all defective samples be fixed and all missing samples be delivered the following Monday.

On or about May 22, 2006, Mr. Petzold returned Ms. Lopusznick's call, and informed her that Mr. Gasch, the chairman of Fey Publishing, had decided that Fey Publishing would not print the "Alternative Lifestyle" line after reviewing its contents. According to Plaintiff, Mr. Gasch explained that he did not agree with the "Alternative Lifestyle" line and did not want to tarnish the reputation of Fey Publishing by printing that line. Despite Ms. Lopusznick's plea that the public would not know which company printed the line, Mr. Petzold allegedly told Ms. Lopusznick that Mr. Gasch

did not care and did not want Fey Publishing to have anything to do with the "Alternative Lifestyle" line.  Mr. Petzold apologized to Ms. Lopusznick for Mr. Gasch's decision and expressed his disagreement with the decision.

In order to avoid litigation, Ms. Lopusznick, through her representative, tried to negotiate with Mr. Petzold to have him find another suitable printing company to fulfill the contractual terms that Fey Publishing no longer intended to honor, at no additional cost or interruptions to Plaintiff.  Mr. Petzold agreed, and found a replacement printing company for Plaintiff, but failed to discuss in any way with the replacement printing company how the work should be transferred over, thereby, causing severe disruptions to Plaintiff during the transition.  Plaintiff alleges that because of these disruptions, it suffered tremendous monetary loss.

In addition to Defendants' failure to fulfill their contractual obligations, Plaintiff alleges that Fey Publishing had promised satisfaction of its services on its website.  Specifically, Fey Publishing stated on its website that "[h]igh importance is placed on personal relationships at Fey," and that "[t]he success of this business always has and always will rely on the satisfaction of our clients." (Compl. Count IV, ¶ 2-3.)  Furthermore, Fey Publishing's website stated, "[n]ew technology, bigger and faster presses, highly trained employees and a modern facility have all been implemented for one reason.  More smiles.  If we take care of that, everything else takes care of itself." (Compl. Count IV, ¶ 4.)  "If the customer isn't smiling, fix it." (Compl. Count IV, ¶ 5.)  Accordingly, Plaintiff alleges that Defendants violated the New Jersey Consumer Fraud Act by not fulfilling these "promises."

On September 27, 2006, Plaintiff filed a six-count Complaint with the Superior Court of New Jersey, Law Division in Monmouth County, alleging: I) Defendants breached the contract Plaintiff

entered into with Fey Publishing; II) Defendants violated the New Jersey's Law Against Discrimination ("NJLAD") when they discriminatorily refused to print the "Alternative Lifestyle" line; III) Plaintiff is entitled to punitive damages as a result of Defendants' violation of NJLAD; IV) Defendants violated the New Jersey's Consumer Fraud Act (the "CFA") for making false and deceitful promises; V) Defendants negligently misrepresented that they would print the "Alternative Lifestyle" line, and Plaintiff reasonably and justifiably relied on such misrepresentation to its detriment; and VI) Plaintiff is entitled to attorneys' fees and costs.

On November 10, 2006, Defendants filed a notice of removal to this Court based on diversity of citizenship under 28 U.S.C. § 1332(a). Defendants then filed the instant motion to dismiss all counts against Mr. Gasch and Counts II-VI against Fey Publishing. The parties later stipulated that Counts I, IV and V against Mr. Gasch be dismissed.

**II.    DISCUSSION**

    **A. Standard of Review for Motion to Dismiss**

The Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." Oatway v. American Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)). The Court need not, however, credit a plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Similarly, the Court is not required to assume that a plaintiff can prove facts not alleged. Evancho v. Fisher, 423 F.3d 347, 354 (3d. Cir. 2005). The focus of the Court's Rule 12(b)(6) analysis "is not whether a plaintiff will ultimately prevail but whether he or she is

entitled to offer evidence to support the claims." Oatway, 325 F.3d at 187.

### B. Count II - Plaintiff's NJLAD Claims

Plaintiff alleges that both Defendants engaged in discriminatory acts, in violation of NJLAD, when Fey Publishing refused to print the "Alternative Lifestyle" line because of Mr. Gasch's decision that Fey Publishing would not be associated with such products. Defendants argue that Plaintiff is barred from making its NJLAD claim because Plaintiff fails to identify any individual of a protected class against whom the alleged discriminatory acts were targeted. In other words, Defendants contend that Plaintiff has no standing to bring its NJLAD claim. The Court finds that although Plaintiff has standing to assert its NJLAD claim against Fey Publishing, Plaintiff fails to allege causation and damages by failing to identify the customers who purchase the Alternative Lifestyle line of products. In addition, Mr. Gasch may be held liable under NJLAD for aiding and abetting Fey Publishing's discriminatory conduct.

Under NJLAD, it is illegal "[f]or any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, *provide goods, services or information to*, or otherwise do business with any other person on the basis of the . . . *affectional or sexual orientation* . . . of such other person or of such other person's . . . business associates, suppliers, or customers." N.J.S.A. 10:5-12(l) (emphasis added). The statute also provides that "[a]ny person claiming to be aggrieved by . . . unlawful discrimination" may file a LAD claim. Berner v. Enclave Condo. Ass'n, Inc., 322 N.J.Super. 229, 235 (App. Div. 1999) (quoting N.J.S.A. 10:5-13).[1] "Person" is defined as "one or

---

[1] Plaintiff alleges in the Complaint that it has standing under N.J.S.A. 10:5-38 for its NJLAD claim. N.J.S.A. 10:5-38 states in relevant parts, "[a]ny individual . . . and any organization which represents or acts to further the interest of individuals who have been discriminated against . . . shall have standing in courts of law to institute actions to enforce the provisions of this act." N.J.S.A. 10:5-38. However, since Plaintiff is suing on behalf of itself

more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5(a). Furthermore, the statute provides that "[a]ny complainant may initiate suit in Superior Court under this act without first filing a complaint with the division or any municipal office." N.J.S.A. 10:5-13.

In order for a plaintiff to bring a claim under NJLAD, it must satisfy Article III of the U.S. Constitution's requirements for standing. Anjelino v. New York Times Co., 200 F.3d 73, 92 (3d Cir. 1999). Under Article III, to establish standing, a party must show that 1) he suffered some actual or threatened injury as a result of illegal conduct by the defendant; 2) the injury can be fairly traced to the challenged action; and 3) the injury is likely to be redressed by a favorable decision. Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

In addition, the federal judiciary has also adhered to a set of prudential principles to ensure that the courts do not overextend their powers. Id. at 475. In particular, the U.S. Supreme Court has required plaintiffs to fall within the "zone of interest" to be protected or regulated by the statute in question. Id. Courts, however, have broadly applied the "zone of interest" standard when adjudicating discrimination cases. The U.S. Supreme Court held that, in the context of civil rights statutes, courts "can give vitality to [the statutes] only by a generous construction which gives standing to sue to all . . . who are injured by . . . discrimination." Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 212 (1972). Similarly, the New Jersey State Legislature stated that

---

and claiming damages suffered by itself (Compl. Count II, ¶ 17), and not acting in furtherance of the interest of other individuals, Plaintiff misstates the applicable statute under which it has standing for this claim. Rather, N.J.S.A. 10:5-13 controls. As such, Plaintiff shall amend its Complaint to reflect the proper basis for standing.

"discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institution and foundation of a free democratic State." N.J.S.A. § 10:5-3; see also Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 491 (1982). The Legislature further stated that it "intends [remedies] be available to all persons protected by this act and that this act shall be liberally construed." Id. Pursuant to those objectives, the Supreme Court of New Jersey has held that given the clear public policy of this State to "eradicate individious discrimination," no person should be deterred from exercising his rights under NJLAD. Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 630-32 (1995). "New Jersey has always been in the vanguard in the fight to eradicate the cancer of unlawful discrimination of all types from our society." Peper v. Princeton Univ. Bd. Of Trs., 77 N.J. 55, 80 (1978).

Under New Jersey case law, it is illegal for persons to engage in illegal discriminatory retaliation, even indirect reprisals. Craig, 140 N.J. at 630-32. A person wrongfully discriminated for associating with a member of a protected group is the functional equivalent of being a member of the protected group. O'Lone v. N.J. Dept. of Corr., 313 N.J.Super. 249, 255 (App. Div. 1998). Indirect victims of discrimination have standing to assert claims under NJLAD. Anjelino, 200 F.3d at 92. Indeed, courts construing NJLAD have consistently allowed standing to victims of discrimination even if the victims were not members of a protected group or were not directly discriminated against. See Anjelino, 200 F.3d at 88-93 (holding that male employees had standing to assert sex discrimination claims for discrimination against female workers because they suffered pecuniary injuries); Berner, 322 N.J.Super. at 234-35 (holding that Caucasian condominium owner had standing to bring NJLAD suit against condominium association for prohibiting lease agreement with an African American leasee); O'Lone, 313 N.J.Super. at 253-56 (holding that plaintiff had

standing to sue for being terminated for employment because he was dating an African American woman); Kessler Inst. for Rehab., Inc. v. Mayor and Council of the Borough of Essex Fells, 876 F.Supp. 641, 649-54 (holding that owner and operator of health care facility for disabled persons had standing to sue the municipality for ordinance authorizing condemnation of property on which the owner planned to build a treatment facility); Craig, 140 N.J. at 629-33 (holding that co-employees had standing to sue for being discharged because of their status as friends or relatives of another employee who filed a discrimination claim against the employer).

The New Jersey courts reasoned that such broad construction of the various discrimination statues must be made because narrower constructions would "produce absurd and unjust results," and that denying standing to indirect victims would discourage even victims of direct discrimination from asserting a claim. Craig, 140 N.J. at 630-32. The victims of a discriminatory act are not just the people such an act is directed at, but also the community as a whole. Trafficante, 409 U.S. at 211. Allowing all victims to sue against perpetrators of discrimination serves an important role in protecting not only those against whom discrimination is directed but also "those whose complaint is that the discrimination affects the very quality of their daily lives." Id. at 211 (citing Shannon v. United States Dept. of Housing & Urban Dev., 436 F.2d 809, 818 (3d Cir. 1970)).

In this case, Defendants argue that Plaintiff has not identified any discriminatee that is a member of a protected class, therefore Plaintiff has not alleged any actionable discrimination as required by NJLAD. Essentially, Defendants are claiming that Plaintiff fails to qualify as a "person," under NJLAD, who may file a claim or identifies anyone who does qualify, because the alleged discriminatory acts were not directed at Plaintiff on the basis of its sexual orientation, and therefore, falls outside the "zone of interest" protected by NJLAD.

However, pursuant to established case law, NJLAD clearly does not require the discriminatory act to be directed at Plaintiff. Instead, it is sufficient, for the purpose of determining standing, that Plaintiff shows it suffered an injury due to the discriminatory act, regardless whether the act was directed at Plaintiff. According to Plaintiff's allegations, Fey Publishing refused to provide contracted services to Plaintiff with discriminatory intent towards a protected class on the basis of sexual orientation, an act prohibited by NJLAD. Plaintiff allegedly suffered concrete and measurable economic damages as the result of Fey Publishing's alleged illegal discrimination; the injuries were directly related to and, thus, fairly traceable to Fey Publishing's alleged actions; and the injuries will likely be redressed by a favorable decision, in the form of damage awards. Simply put, Defendants wrongfully discriminated against Plaintiff, based upon its association with members of a protected group and, hence, it is the functional equivalent of being a member of the protected group. Indeed, this type of indirect discrimination was expressly prohibited in O'Lane. 313 N.J.Super. at 253-56 (holding that plaintiff had standing to sue for being terminated for employment because he was dating an African American woman).

Nevertheless, while Plaintiff has standing to bring NJLAD claim against Fey Publishing, it has failed to identify in its Complaint any individual or group of individuals within the protected class who have been discriminated against. Although it is not necessary for Plaintiff to explicitly identify these customers in the Complaint, Plaintiff must plead sufficient allegations to state a lcaim for causation and damages. In order to allege causation, Plaintiff must assert that Fey Publishing's discriminatory actions have in fact negatively affected Plaintiff's business through a loss of potential customers, and that these customers are members of the protected class; ultimately, it is Plaintiff's burden, during discovery, to produce information identifying these customers. At the pleading stage,

however, Plaintiff need not identify such customer by name.  Accordingly, Counts II against Fey Publishing is dismissed without prejudice, however, Plaintiff shall be given leave to amend its Complaint with respect to this claim.

Similarly, because Plaintiff plead punitive damages and attorneys' fees and costs as separate counts, the Court will dismiss Count III and VI of the Complaint without prejudice.  Again, Plaintiff shall have leave to amend its Complaint to incorporate punitive damages, pursuant to N.J.S.A. 10:5-3, and attorneys' fees and costs, pursuant to N.J.S.A. 10:5-27.1, into its NJLAD claim against Fey Publishing.  See N.J.S.A. 10:5-3 ("Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages.  The Legislature intends that such damages be available to all persons protected by this act").

With respect to NJLAD claims against Mr. Gasch, the Court finds that while Mr. Gasch is not liable under N.J.S.A. 10:5-13, he may be liable under the "aiding and abetting" provision of the NJLAD.  NJLAD states in relevant parts that "any person . . . [who] aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or . . . attempt[s] to do so" is guilty of unlawful discrimination.  N.J.S.A. § 10:5-12(e).  Plaintiff alleges that Mr. Gasch incited and/or compelled Mr. Petzold into refusing to honor the contract between Fey Publishing and Plaintiff. While the Court does not find that Mr. Gasch aided or abetted Mr. Petzold in committing a discriminatory act, the Court, nevertheless, finds it may be alleged that Mr. Gasch, as the director of the company, aided and abetted Fey Publishing, the corporate entity, in conducting the alleged discrimination.[2]

---

[2]Mr. Gasch cannot be held to have aided or abetted Mr. Petzold because the decision to refuse to print the "Alternative Lifestyle" line was made by Mr. Gasch, not by Mr. Petzold; it is not clear if Mr. Petzold even had the authority to make such a decision.  No reasonable inference

In order for an employee to be held liable under N.J.S.A. § 10:5-12(e) for aiding and abetting an employer, he must "knowingly give substantial assistance or encouragement to the unlawful conduct of his employer." Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998). To establish liability, plaintiff must show that "1) the party whom the defendant aids must perform a wrongful act that causes an injury; 2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides assistance; and 3) the defendant must knowingly and substantially assist the principle violation." Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (quoting Hurley, 174 F.3d at 127). To determine whether a defendant provided substantial assistance, five factors must be considered: 1) the nature of the act encouraged; 2) the amount of assistance given; 3) whether the defendant was present at the time of the discrimination; 4) the defendant's relations to the others, and 5) the state of mind of the defendant. Id. The defendant may be held liable as an aider and abettor when he actively engages in discriminatory conduct toward plaintiff. Hargrave v. County of Atlantic, 262 F.Supp.2d 393, 435 (D.N.J. 2003) (citing Santiago v. City of Vineland, 107 F.Supp.2d 512, 545 (D.N.J. 2000)).

In this case, after weighing the Hurley factors, the Court finds that a claim may be made that Mr. Gasch is personally liable under NJLAD for aiding and abetting Fey Publishing in carrying out its discriminatory act. First, the Court has already found that Plaintiff may assert a claim against Fey Publishing for violation of NJLAD in its Complaint. Second, it is reasonable to infer from the Complaint that Mr. Gasch, as a director and clearly a decision-maker of Fey Publishing, is generally

---

can be made from Plaintiff's allegations that Mr. Gasch incited or compelled Mr. Petzold to perform an illegal action of any kind. Furthermore, Plaintiff has made no allegations that Mr. Petzold even committed unlawful discrimination, either by coercion or on his own. In fact, Mr. Petzold's disclosure to Plaintiff that he personally disagreed with Mr. Gasch's decision (Compl. Count I, ¶ 30) supports the opposite conclusion.

aware of his role in the discriminatory actions. This is evidenced by Mr. Gasch's alleged statements that "he did not want to tarnish the reputation of Fey Publishing Company by printing the Alternative Lifestyle line" and "he did not want Fey Publishing Company to have anything to do with the Alternative Lifestyle line." (Compl. Count II, ¶ 3-4.) Finally, Mr. Gasch allegedly knowingly provided substantial assistance in the performance of the illegal discrimination. Drawing all inferences in favor of Plaintiff, it is apparent that Mr. Gasch was aware that his decision not to print the "Alternative Lifestyle" line was discriminatory. He was also aware that, as a director, his decision would substantially give rise to the discriminatory conduct in question. In fact, as alleged, Mr. Gasch did make the decision to discriminate.

While Mr. Gasch's liability hinges on whether he affirmatively aided Fey Publishing in carrying out its discriminatory actions or merely had some role, knowledge or involvement in the alleged actions, for the purposes of a motion to dismiss, Plaintiff need not prove nor offer evidence in support of its allegations. At this time, the Court also need not decide whether Mr. Gasch was the sole decision-make/proprietor of Fey Publishing, thereby potentially avoiding liability under the "aiding and abetting" provision. These are issues of fact that should be appropriately dealt with at later stages of the proceedings. Accordingly, the Court finds that Mr. Gasch may have violated the "aiding and abetting" provision of the NJLAD. However, Plaintiff is instructed to amend its Complaint to properly assert allegations of aiding and abetting by Mr. Gasch, including the proper statutory basis for cause of action. In addition, for the same reasons set forth above with respect to Plaintiff's claims for punitive damages and attorneys' fees and costs against Fey Publishing, Counts III and VI against Mr. Gasch is dismissed without prejudice, but Plaintiff shall amend its Complaint to incorporate these claims in the amended NJLAD claim to filed, as opposed to being plead in

13

separate counts.

**C.  Count IV - Consumer Fraud Act Violations**

Plaintiff alleges in its Complaint that statements made on Fey Publishing's website, such as "high importance is placed on personal relationships here at Fey", "the success of this business always has and always will rely on the satisfaction of our clients", and "if the customer isn't smiling, fix it", as well as Mr. Petzold's promise that the "Alternative Lifestyle" line would be printed, violated the CFA. Fey Publishing contends that these statements are not assurances of fact and, thus, do not rise to the level of fraud. The Court finds that even taking Plaintiff's allegations as true, Fey Publishing's conduct did not violate the CFA.

The CFA states, in relevant parts, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . is declared to be an unlawful practice." N.J.S.A. 56:8-2. To constitute consumer fraud, the business practice in question must be "misleading" and "stand outside the norm of reasonable business practice in that it will victimize the average consumer." Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 416 (1995). Alleged consumer fraud must raise a matter of public concern sufficient to trigger a suspicion of actual malice. Id. The conduct "must deal primarily with consumer fraud viewed as a whole in light of all surrounding circumstances." Id. Because plaintiff has a high burden to establish fraud by clear and convincing evidence in a consumer fraud claim, Id. at 424, to survive a motion to dismiss, plaintiff must come forward with allegations which could lead a jury to find

such clear and convincing proof of fraud. Alexander v. CIGNA Corp., 991 F.Supp. 427, 435 (D.N.J. 1998).

Mere puffery does not constitute consumer fraud. Turf Lawnmower, 139 N.J. at 416. A misstatement by a business does not rise to the level of fraud unless it is a misrepresentation of material fact. Rodio v. Smith, 123 N.J. 345, 352 (1991). Statements as to future expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations even though they may turn out to be wrong. Alexander, 991 F.Supp at 435. Similarly, "puffery" statements or "vague and ill-defined opinions" are not assurances of fact, and cannot be construed as misrepresentation. Id.

In this case, statements made on Fey Publishing's website - "high importance is placed on personal relationships here at Fey," "the success of this business always has and always will rely on the satisfaction of our clients," and "if the customer isn't smiling, fix it" - are simply too "puffery" to be construed as promises or assurances of any kind; by themselves, these statements do not purport to accomplish anything concrete. An average consumer is not so unsophisticated as to interpret these statements as "misleading." Even if these statements can be read as expectations of future performance, Fey Publishing's failure to perform to the level of expectations raised by these statements does not rise to the level of fraud because expectations are not considered promises or assurances of fact. Id. Other courts have held that similar statements are commonplace advertisements that do not rise to the level of fraud. See, e.g., Rodio, 123 N.J. at 352 (holding that "You're in good hands with Allstate" is nothing more than puffery); N.J. Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 13-14 (App. Div. 2003) (holding that "can lead a normal nearly symptom-free life again" is merely puffery in nature); Alexander, 991 F.Supp. at 436 (holding that

"would take [plaintiff] into the twenty-first century and beyond" and "committed to the future success" were predictions of the future and cannot serve as a basis for a fraud claim). Therefore, Plaintiff fails to assert sufficient allegations that could lead a jury to find clear and convincing proof of fraud.

Plaintiff also alleges that the failure of Fey Publishing to fulfill Mr. Petzold's promise to print the "Alternative Lifestyle" line constitutes fraud. The Court finds this allegation without merit. Under New Jersey case law, in the context of a fraud claim, a promise may constitute a misrepresentation only if the promisor knew at the time the promise was made that it could not or would not be fulfilled. Barry v. N.J. State Highway Auth., 245 N.J.Super. 302, 310 (Ch. Div. 1990). The mere non-performance of a promise is not fraud. Id.; see also Anderson v. Modica, 4 N.J. 383, 392 (1950) ("[F]raud must be in the original contract or transaction and not in the non-fulfillment of the contract.").

In this case, Plaintiff raises no allegations in its Complaint that Mr. Petzold made his promise knowing that it would not be fulfilled. In fact, Plaintiff's own Complaint states that Mr. Petzold apologized to Plaintiff regarding Fey Publishing's decision not to print the line, which suggests that Mr. Petzold had no knowledge that the promise was false. (Compl. Count I, ¶ 29.) Rather, Plaintiff relies exclusively on Fey Publishing's refusal to fulfill the contract as its basis for a fraud claim. Such a conclusory allegation, without any assertion that Fey Publishing misled Plaintiff at the outset, is without merit.[3] Therefore, the Court finds that Plaintiff's allegations of Fey Publishing's conduct

---

[3]Plaintiff's reliance on Leon v. Rite Aid Corp., 340 N.J.Super. 462 (App. Div. 2001), is misplaced. In Leon, plaintiff alleged that defendant prominently advertised that it had "the lowest and best prices" on prescription drugs and actively promoted a best price guarantee. Id. at 465. Furthermore, plaintiff alleged that defendant directed its pharmacists to overcharge uninsured pharmacy customers and other pharmacy customers who were unlikely to challenge its

are insufficient to assert a violation of the CFA. Accordingly, Plaintiff fails to state a claim upon which relief can be granted with regard to Count IV of the Complaint.

### D. Count V - Negligent Misrepresentation

Plaintiff alleges in its Complaint that Fey Publishing made false promises that Plaintiff reasonably and justifiably relied on to its detriment.[4] Fey Publishing contends that Plaintiff is barred from asserting a negligent misrepresentation claim by the "economic loss" doctrine because Plaintiff is prohibited from recovering economic losses in tort for which it is entitled only by contract. The Court finds that Plaintiff's allegations are essentially contractual in nature, therefore, Plaintiff is barred from bringing a negligent misrepresentation claim.

Under New Jersey law, a contractor's liability for economic loss is limited to the terms of the contract. Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 310 (2002). Economic losses inflicted by a seller of goods are better resolved under the principles of contract law. Spring Motors Distrib., Inc. v. Ford Motor Co., 98 N.J. 555, 579 (1985). Tort principles, such as negligence, are better suited

---

prices, and would claim oversight if caught by customers. Id. The court in Leon held that plaintiff had sufficiently alleged an affirmative act of fraud to survive a motion to dismiss. Id. at 471. In the instant case, Plaintiff claims that Leon stands for the proposition that when a party makes a promise that is ultimately not fulfilled, an affirmative act of fraud has been committed. That is simply not the ruling in Leon. In Leon, the affirmative act of fraud was not the alleged failure to fulfill a promise, but the deliberate and systematic practice of defrauding the public. In effect, the defendant in Leon *knew* it would not fulfill its "the lowest and best prices" guarantee to every customer, and that was the basis of the court's ruling.

[4]A negligent misrepresentation claim requires that Plaintiff allege 1) a false statement, 2) negligently made, 3) was justifiably relied upon, 4) to Plaintiff's detriment. H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983). Like in Plaintiff's CFA claim, Plaintiff fails to allege that Mr. Petzold made a statement while aware or should have been aware of its falsehood, therefore Plaintiff fails to plead the second element of negligent misrepresentation. As such, in addition to reasons stated below, the Court finds that Plaintiff fails to state a claim upon which relief can be granted with respect to Count V of the Complaint.

for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damage that parties have or could have addressed in their agreement. Id. at 579-80. A tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. Saltier, 170 N.J. at 316. In some circumstances, courts have held that when a plaintiff alleges a tort claim, that plaintiff may sue for both contract and tort remedies if the remedy provided by the tort claim is not available in the contract claim. See First Valley Leasing, Inc. v. Goushy, 795 F.Supp. 693, 699-701 (1992) (plaintiff were entitled to treble damages under fraud claim, and statutory damages arising out of violation of the CFA, neither of which were available under the contract claim); Costal Group Inc. v. Dryvit Systems, Inc., 274 N.J.Super. 171, 178-79 (App. Div. 1994) (plaintiff was entitled to statutory damages arising out of violation of the CFA); Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co., 226 N.J.Super. 200, 227 (App. Div. 1988) (plaintiff may be entitled to punitive damages if its fraud claim was successful).

    In this case, Plaintiff does not allege that Fey Publishing has breached an independent duty other than its contractual obligations. Plaintiff alleges that Fey Publishing made a promise that it later refused to honor, which is the same basis for its breach of contract claim. Furthermore, the Court finds that Plaintiff's damage claims for negligent misrepresentation are all economic damages that can be recovered under the breach of contract claim; in fact, the relief sought under negligent misrepresentation in the Complaint is the *same* damage claim Plaintiff asserts under the breach of contract claim. Even if Plaintiff successfully alleges all elements of a negligent misrepresentation claim, which it does not, Plaintiff does not allege a separate tort claim independent of its breach of contract claim. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted

with regards to Count V of the Complaint.

### E.  Defendants' Motion to Strike

Defendants request the Court to strike from the Complaint certain redundant and immaterial matters regarding Plaintiff's Prayers for Relief in the Complaint.  Specifically, Defendants argue that Plaintiff repeatedly states the same Prayers for Relief in all substantive counts of the Complaint, namely, Counts II, IV and V, and that these repetitions are unnecessary and should be stricken from the Complaint.  The Court finds that because Counts IV and V are dismissed, and that Plaintiff is instructed to amend its Prayers for Relief in Count II to incorporate Counts III, punitive damages, and VI, attorneys' fees and costs, the motion to strike is moot.

### III.   CONCLUSION

For the reasons set forth above, Counts IV and V against both Defendants are dismissed; and Counts II, III and VI of the Complaint against both Defendants are dismissed without prejudice. Plaintiff shall amend its Complaint within ten days from the date of this Opinion consistent with the rulings set forth herein.  In addition, Defendants' Motion to Strike is moot.

An appropriate Order shall follow.

/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: August 20, 2007